UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| VERIC DEAN OSGOOD, | ) | |
| | ) | |
| Petitioner, | ) | |
| v. | ) | No.: 3:10-cv-457-TAV-CCS |
| | ) | |
| HENRY STEWARD, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM**

This is a petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner Veric Dean Osgood ("petitioner"). The matter is before the Court on the respondent's answer to the petition. For the following reasons, the petition for the writ of habeas corpus will be **DENIED** and this action will be **DISMISSED WITH PREJUDICE**.

**I.  Standard of Review**

A state prisoner is entitled to habeas corpus relief "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under Rule 8 of the Rules Governing Section 2254 Cases In The United States District Courts, the Court is to determine, after a review of the answer and the records of the case, whether an evidentiary hearing is required. If no hearing is required, the district judge is to dispose of the case as justice dictates. If the record shows conclusively that petitioner is not entitled to relief under § 2254, there is no need for an evidentiary hearing and the petition should be denied. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986).

## II. Factual Background

The respondent has provided the Court with copies of the relevant documents as to petitioner's post-conviction proceedings. [Doc. 10, Notice of Filing Documents, Addenda 1 & 2]. Petitioner pleaded guilty to an information charging him with two counts of aggravated kidnapping, one count of aggravated robbery, and one count of aggravated burglary. Pursuant to the plea agreement, he was sentenced to concurrent terms of imprisonment of twelve years on the aggravated kidnapping convictions, a consecutive term of imprisonment of twelve years on the aggravated robbery conviction, and a consecutive term of imprisonment of six years on the aggravated burglary conviction, for a total effective sentence of thirty years. Petitioner subsequently filed a petition for post-conviction relief, in which he asserted a claim of ineffective assistance of counsel and that his guilty plea was not knowingly and voluntarily entered. The post-conviction petition was denied after an evidentiary hearing, and the Tennessee Court of Criminal Appeals affirmed. *Osgood v. State*, No. E2009-00757-CCA-R3-PC, 2010 WL 3293926 (Tenn. Crim. App. Aug. 20, 2010) [Addendum 2, Doc. 1[1]].

The Tennessee Court of Criminal Appeals on appeal from the denial of post-conviction relief summarized the history of petitioner's guilty plea and post-conviction proceedings as follows:

---

[1]The opinion of the Tennessee Court of Criminal Appeals was incorrectly designated by the respondent in the Notice of Filing Documents as Addendum 2, Doc. 3.

The Petitioner agreed to waive his right to prosecution by indictment or presentment and was charged by information on two counts of especially aggravated kidnapping, one count of aggravated robbery, and one count of aggravated burglary. On May 30, 2007, the Petitioner pled guilty to the charged offenses. The plea agreement provided for sentences of twelve years for each aggravated kidnapping conviction to be served concurrently; a twelve-year sentence for the aggravated robbery conviction to be served consecutively to the aggravated kidnapping sentences; and a six-year sentence for the aggravated burglary conviction to be served consecutively to the aggravated robbery sentence for a total effective sentence of thirty years.

At the guilty plea hearing, the State recited the following factual basis for the pleas:

> [T]he victims in this matter, Mr. and Mrs. Patterson, residents of the City of Friendsville, [would testify] that on the date appearing on the information-that being March the 22nd, 2007, that [the Petitioner], along with Co-Defendants Kerley and Patterson, entered their residence around the midnight hour ... by way of ruse from Ms. Kerley that she was feigning car trouble and that she had a small child in the car. She gained initial entry into the residence. [The Petitioner] followed close behind, entered into a physical confrontation with Mr. Patterson, ultimately shoving the 70-some-odd-year-old gentleman to the ground and binding him, holding him at gunpoint. When Mrs. Patterson came out, he instructed her to be seated, held her at gunpoint as well. Co-Defendant Kerley began to ransack the residence, retrieving items of personalty from the person of Mr. Patterson, as well as items from the household; to wit, change, personal items such as shoes, car keys, et cetera.
>
> They then stole the elderly couple's vehicle and fled the scene. They were later apprehended in the couple's vehicle-all three co-defendants were later apprehended in the vehicle with items belonging, in fact, to the victims.

Subsequently, the Petitioner filed a petition for post-conviction relief, alleging that his trial counsel was ineffective and that his guilty pleas were not knowingly and voluntarily entered. In support of his claims, the Petitioner alleged that he was erroneously advised by counsel that he would have to serve only thirty percent of his thirty-year sentence in confinement.

3

*Id*., 2010 WL 3293926 at *1 (internal citation omitted).

The appellate court also summarized the testimony at the post-conviction evidentiary hearing and the findings of the trial court in denying post-conviction relief:

> At the post-conviction hearing, the Petitioner testified that he and counsel had numerous discussions regarding whether the Petitioner should plead guilty. The Petitioner maintained that he had been "threatened" that if he proceeded to trial, he faced eighty-five years in prison. The Petitioner said trial counsel showed him a chart which explained the potential sentences in different ranges, but he did not understand what he was being shown.
>
> The Petitioner stated that trial counsel told him that if he accepted the plea agreement, he could be released after serving eight years, which was approximately thirty percent of his thirty-year sentence. The Petitioner said that after he pled guilty and went to prison, he learned that because he had no prior felony convictions, he was "perfectly qualified for not only the low range of eight to twelve ... [but] also qualified for concurrent [sentencing]."
>
> The Petitioner said he pled guilty believing "that they would go lenient on me, I would be shown mercy. And the mercy would come either through the percentage or the year amount." He stated that trial counsel advised him that he would be eligible to get out of prison in eight years if he "kept his nose clean" but that his early release was not guaranteed.
>
> The Petitioner acknowledged that the agreement provided that he would be eligible for release after serving eighty-five percent of his sentence in confinement. However, he said that counsel explained to him that eighty-five percent of his sentence was the maximum time he would be required to serve. The Petitioner said he would not have entered guilty pleas had he known that he would have to serve eighty-five percent of his aggravated kidnapping sentences in confinement before becoming eligible for release. He acknowledged that counsel "[b]riefly" reviewed the plea agreement form with him before he signed it.
>
> The Petitioner stated that he became further confused about the terms of his guilty pleas when the trial court referred to the charging instrument as an indictment even though the Petitioner had actually waived his right to an indictment and was being charged by information. He said he waived his right

to an indictment believing it would prevent the State from seeking a longer sentence.

The Petitioner said that the State made the plea offer two weeks before he accepted it and that he initially refused the offer. However, based upon trial counsel's advice and his fear of receiving a longer sentence if convicted at trial, he eventually decided to accept the State's offer. He said counsel told him that a trial would not "be a good idea. That he wasn't a paid lawyer and that his wife was pregnant and by the time we went to trial his wife's baby would be due and he wouldn't have the time or the access or the ability to properly represent me in a trial." The Petitioner said he was also told that he faced a potential sentence of eighty-five years, and he believed it was in his best interest to accept a plea agreement with a thirty-year sentence and the possibility of release after eight years.

Petitioner's trial counsel testified that he was appointed to represent the Petitioner. He averred that at no time during his representation did he intimate that the Petitioner might be released after serving eight years in confinement. Trial counsel said that the Petitioner was a standard Range I offender and that he faced a potential maximum sentence of forty-two years.

Trial counsel said the State had "a particular interest" in the case because the elderly victims were the grandparents of one of the co-defendants, they had sustained serious physical injury during the offense, and the case had received "significant media attraction." The State also threatened to try the counts separately to "bump [the appellant] up into a different range." After plea negotiations began, the State told counsel that if the Petitioner did not plead guilty, the prosecutor would go back before the grand jury and seek further felony charges against the Petitioner. Counsel said he attempted to negotiate a plea involving a sentence less than thirty years, but the State would not agree to a lesser sentence.

Trial counsel said he was in contact with the Petitioner no less than thirteen times during his representation and that he reviewed the plea agreement with the Petitioner. Trial counsel said the Petitioner understood the sentences he was receiving and knew some of the sentences were to be served at eighty-five percent. Trial counsel said he made a graph that depicted the State's offer, including the ranges of punishment and the lengths of sentences. On the graph, which was introduced at the post-conviction hearing, trial counsel wrote that the Petitioner would serve 15.6 years in confinement if he

5

served eighty-five percent of his aggravated kidnapping sentences and thirty percent of his aggravated robbery and aggravated burglary sentences.

Trial counsel said that he received discovery from the State, which included statements as well as photographs of the victims and of the items recovered. He said the Petitioner initially wanted to fight the charges. However, the Petitioner was unable to meet his $300,000 bond. Additionally, one of the Petitioner's co-defendants pled guilty, and counsel advised the Petitioner that the co-defendant could "turn state's evidence" against him. Trial counsel denied ever telling the Petitioner that counsel's wife's pregnancy would affect his representation.

At the conclusion of the hearing, the post-conviction court found that counsel was not ineffective and that the Petitioner's pleas were knowingly and voluntarily entered. Specifically, the court found that counsel was credible and that there was no proof, other than the Petitioner's bare assertions to support his allegations of ineffective assistance. The court found that the Petitioner's claims were belied by the transcript of the guilty plea hearing, which reflected that the Petitioner was advised he would have to serve eighty-five percent of two of his sentences. The transcript reflects that the following colloquy occurred regarding the sentences to be imposed:

> The Court: All right. Do you understand, in counts one and two, you're going to receive a sentence of twelve years?
>
> [The Petitioner]: Yes.
>
> The Court: All right, sir. Do you also understand that in count three, you're going to receive another twelve-year sentence, do you understand?
>
> [The Petitioner]: Yes.
>
> The Court: And that sentence is going to run consecutive to count[s] one and two?
>
> [The Petitioner]: Yeah.
>
> The Court: And do you understand in the last count of the indictment, you're going to receive a six-year sentence, and that sentence is going to run consecutive to count one, two, and

three. And this effectively gives you a 30-year sentence; do you understand that?

[The Petitioner]: Yes.

The Court: You're eligible for release on three of these sentences at 85 percent; do you understand that? Or maybe two of these sentences....

[The State]: Two of them, Your Honor.

The Court: Two of these sentences at 85 percent; do you understand that?

[The Petitioner]: Yes

The Court: That doesn't mean you'll be released at 85 percent, do you understand?

[The Petitioner]: Right. Yes.

The Court: That means that's the first time you'll be eligible for being released. With regard to the burglary conviction and the other conviction, you'll be eligible for release at 30 percent; do you understand?

[The Petitioner]: Yes.

The Court: And again, that doesn't mean that you're going to be released; that means you'll just be considered for release. Do you understand?

[The Petitioner]: Yes.

The Court: Do you understand that the effect of this sentence is to give you 30 years in the State penitentiary? Do you understand?

[The Petitioner]: Yes.

*Id*. at **2-4.

7

This Court has reviewed the record of petitioner's post-conviction proceedings, including the transcript of the evidentiary hearing and the transcript of petitioner's guilty plea. [Addendum 1, Vol. 1, Technical Record of Post-Conviction Proceedings; Addendum 1, Vol. 2, Transcript of the Post-Conviction Hearing; Addendum 1, Vol. 4, Exhibits to Post-Conviction Hearing, Exhibit No. 1, Transcript of Guilty Plea]. The summary by the Tennessee Court of Criminal Appeals is accurate and is supported in the record.

In support of his petition for the writ of habeas corpus, petitioner alleges (1) his guilty plea was not knowingly and voluntarily entered because he did not understand the consequences of his plea, and (2) he received the ineffective assistance of counsel when his attorney advised him to waive his rights and enter a guilty plea that he did not fully understand. The respondent contends he is entitled to judgment as a matter of law based on the findings of the Tennessee state courts.

### III. State Court Findings

Pursuant to 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), petitioner may not obtain federal habeas corpus relief with respect to a claim that was adjudicated on the merits in a state court proceeding unless the state court decision (1) was contrary to, or involved an unreasonable application of, clearly established federal law or (2) was not reasonably supported by the evidence presented to the state court. In addition, findings of fact by a state court are presumed correct and petitioner must rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e).

The Supreme Court, in *Williams v. Taylor*, 529 U.S. 362 (2000), clarified the distinction between a decision "contrary to," and an "unreasonable application of," clearly established Supreme Court law under § 2254(d)(1). A state court decision is "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Id*. at 413. A state court decision "involves an unreasonable application of clearly established Federal law" only where "the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409. A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411.

Recent case law indicates the high bar a habeas petitioner must meet under the standard set by the AEDPA. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision. *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "[A] habeas court must determine what arguments or theories supported or ... could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Id*. The Supreme Court acknowledges this is a very high standard. "If this standard is difficult to

Case 3:10-cv-00457-TAV-CCS   Document 14   Filed 02/18/14   Page 9 of 15   PageID #: 99

meet, that is because it is meant to be." *Id*. *See also Renico v. Lett*, 130 S. Ct. 1855, 1866 (2010) ("AEDPA prevents defendants -- and federal courts -- from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts."); *Peak v. Webb*, 673 F.3d 465, 472 (6th Cir. 2012) ("[T]he Supreme Court has very recently made abundantly clear that the review granted by the AEDPA is even more constricted that AEDPA's plain language already suggests.") (citing *Harrington v. Richter*, 131 S. Ct. at 786).

Petitioner has failed to rebut, by clear and convincing evidence, the findings of the state courts and they will be presumed correct by this Court. In light of the foregoing, the Court will consider petitioner's claims for relief.

## IV. Discussion of Claims

### A. Voluntariness of Guilty Plea

The United States Supreme Court has held that, prior to accepting a guilty plea, a state criminal court judge must affirmatively determine that the plea is "intelligent and voluntary." *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). The judge must ensure that the defendant understands that he is waiving several federal constitutional rights: his right to a trial by jury, his right to confront the witnesses against him, and his privilege against self-incrimination. *Id*. at 243-44.

Petitioner alleges his guilty plea was not voluntary because he was advised by counsel that he would only be required to serve thirty percent of his sentence before he was eligible for release, when in fact it was eighty-five percent. Petitioner raised this claim in his post-conviction proceedings and it was rejected by the state courts. The trial court determined that

10

petitioner entered a knowing and voluntary plea. [Addendum 1, Vol. 1, Technical Record of Post-Conviction Proceedings at 60, Order denying post-conviction relief, p. 10].

As noted in the summary by the Tennessee Court of Criminal Appeals, the trial court specifically found that the transcript of petitioner's guilty plea hearing contradicted his claim that he did not understand the consequences of his guilty plea. [*Id*. at 4-8]. The trial court also found that petitioner's written plea agreement also contradicted his claim:

> Before the Court, as Ex. 3, is Petitioner's guilty plea agreement form in the underlying criminal proceeding. That form unambiguously states that Petitioner received two (2) twelve (12)-year aggravated kidnapping sentences, as a Range I offender, to be served concurrently, with a percentage of eighty-five percent of those twelve (12)-year sentences to be served before he would be eligible for release; and that he received two (2) consecutive sentences, (1) a twelve (12)-year sentence for aggravated robbery with a thirty percent release eligibility, and (2) a six-year aggravated burglary sentence, again at thirty percent, with the aggravated robbery and aggravated burglary sentences to be served consecutively to each other and to the underlying concurrent aggravated kidnapping sentences, for a total effective sentence of thirty (30) years.
>
> Petitioner executed that plea agreement form which, in addition, contained a statement of certain rights of the Petitioner which, by execution of the form, he acknowledged he was aware of, including his right to plead not guilty and to have a jury trial.

[*Id*. at 4, ¶ 14].

In considering the voluntariness of petitioner's guilty plea, the Tennessee Court of Criminal Appeals first noted the *Boykin* standard for evaluating such a claim. *Osgood v. State*, 2010 WL 3293926 at *5. The appellate court then concluded:

> The post-conviction court found that the transcript of the guilty plea hearing belied the Petitioner's contentions. The court noted that the Petitioner's guilty pleas were clearly and unambiguously explained to him, including which

11

> sentences were concurrent, which were consecutive, and the percentage of each sentence which was to be served in confinement. Additionally, the court found that the Petitioner was aware that he had an effective thirty-year sentence. There is nothing in the record to preponderate against the post-conviction court's findings. Accordingly, we conclude that the Petitioner was clearly informed regarding the sentences he was receiving as a result of his guilty pleas. Therefore, we agree with the post-conviction court that counsel was not ineffective in his representation of the Petitioner and that the Petitioner's guilty pleas were knowingly and voluntarily entered.

*Id*. at *6.

As noted, this Court has reviewed the record of petitioner's post-conviction proceedings, including the transcripts of the guilty plea hearing and the post-conviction hearing. This Court has also reviewed petitioner's signed guilty plea, which was an exhibit at the post-conviction hearing. [Addendum 1, Vol. 4, Exhibits to Post-Conviction Hearing, Exhibit No. 3, Plea Agreement]. The findings by the state courts are supported in the record.

In his plea agreement, petitioner acknowledged his understanding of his right to plead not guilty, his right to a trial by jury, his right to confront the witnesses against him, and his right against self-incrimination; he further acknowledged his understanding that he was giving up those rights by pleading guilty. [*Id*. at 2]. The plea agreement also set forth the terms of imprisonment for each conviction and the percentage of each term of imprisonment that petitioner would be required to serve before being eligible for early release. [*Id*. at 2-3]. Petitioner's rights as well as the consequences of his guilty pleas were likewise explained to him during the guilty plea hearing. [*Id*., Exhibit No. 1, Transcript of Guilty Plea].

The Constitution does not require a precise litany for the entry of a valid guilty plea; all that is required is that the guilty plea is in fact voluntary and knowing. *See Campbell v.*

12

*Marshall*, 769 F.2d 314, 324 (6th Cir. 1985); *Armstrong v. Egeler*, 563 F.2d 796, 799 (6th Cir. 1977). The record in this action clearly establishes that the petitioner's guilty pleas were in fact voluntary and in full compliance with the requirements of *Boykin v. Alabama*.

Based upon the foregoing, the state courts' decisions that petitioner's guilty plea was knowingly and voluntarily made were neither contrary to, nor did they involve an unreasonable application of, federal law as set forth in *Boykin v. Alabama*. Accordingly, petitioner is not entitled to relief on this claim.

**B.     Effectiveness of Counsel**

In *Strickland v. Washington*, 466 U.S. 668 (1984) the Supreme Court established a two-part standard for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id*. at 687.

To establish that his attorney was not performing "within the range of competence demanded of attorneys in criminal cases," *McMann v. Richardson*, 397 U.S. 759, 771 (1970), petitioner must demonstrate that the attorney's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. at 687-88. In judging an attorney's conduct, a court should consider all the circumstances and facts of the particular case. *Id*. at 690. Additionally, "a court must indulge a strong presumption that counsel's

13

conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). A finding of serious attorney incompetence will not justify setting aside a conviction, however, absent prejudice to the defendant so as to render the conviction unreliable. *Id*. at 691-92.

The two-part test of Strickland also applies to ineffective assistance of counsel claims in cases involving guilty pleas. *Hill v. Lockhart*, 474 U.S. 52 (1985).

> We hold, therefore, that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel. In the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence already set forth in *Tollett v. Henderson*, [411 U.S. 258 (1973)], and *McMann v. Richardson*, [397 U.S. 759 (1970)]. The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Id*. at 58-59 (footnote omitted).

Petitioner alleges he received the ineffective assistance of counsel when his attorney advised him to waive his rights and enter a guilty plea that he did not fully understand. The trial court and the Tennessee Court of Criminal Appeals concluded that petitioner's guilty plea was knowing and voluntary, and therefore he failed in his claim of ineffective assistance of counsel. In doing so, the appellate court noted that *Strickland v. Washington* and *Hill v.*

14

*Lockhart* established the standard for evaluating the claim of ineffective assistance of counsel. *Osgood v. State*, 2010 WL 3293926 at *5.

This Court having found that petitioner's guilty plea was knowing and voluntary, there is nothing in the record to demonstrate that petitioner received ineffective assistance of counsel under either prong of *Strickland*. Based upon the foregoing, this Court concludes that the state courts' determinations that petitioner received the effective assistance of counsel were neither contrary to, nor did they involve an unreasonable application of, federal law as established by the Supreme Court in *Strickland v. Washington* and *Hill v. Lockhart*. Petitioner is not entitled to relief on this claim.

**V.     Conclusion**

The petition for habeas corpus relief will be **DENIED** and this action will be **DISMISSED WITH PREJUDICE**. Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253(c); Rule 22(b) of the Federal Rules of Appellate Procedure. The Court will **CERTIFY** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the Federal Rules of Appellate Procedure. The Court will further **DENY** petitioner leave to proceed *in forma pauperis* on appeal.

**AN APPROPRIATE ORDER WILL ENTER.**

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE